UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES DEAN LILLEY,

               Petitioner,

      v.

UNITED STATES OF AMERICA,

               Respondent.

CASE NO. C16-0410JLR

ORDER GRANTING PETITION
FOR WRIT OF HABEAS
CORPUS

## I.      INTRODUCTION

On March 18, 2016, Petitioner James Dean Lilley, a federal prisoner, filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based in part on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. ---, 135 S. Ct. 2551 (2015).  (Petition (Dkt. # 1).)  Respondent United States of America ("the Government") opposes Mr. Lilley's petition.  (Resp. (Dkt. # 4).)  The court has

//

//

ORDER- 1

considered the submissions of the parties, the balance of the record,[1] and the applicable law.  Being fully advised, the court GRANTS Mr. Lilley's Section 2255 habeas corpus petition and DIRECTS the Clerk to schedule a resentencing hearing for Mr. Lilley as set forth below.

## II.      BACKGROUND

### A.  Legal Background

In *Johnson*, the Supreme Court concluded that the Armed Career Criminal Act's ("ACCA") residual clause, which defines a "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another,"[2] is unconstitutionally vague.[3]  135 S. Ct. at 2557.  The Supreme Court held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges" and "[i]ncreasing a defendant's sentence under the clause denies due process of law."  *Id.* at 2563.  The Supreme Court

---

[1] Mr. Lilley submitted two notices of supplemental authority.  (8/22/16 Notice (Dkt. # 11); 8/30/16 Notice (Dkt. # 14).)  Mr. Lilley's first notice consists of the *amici curiae* brief of the Federal Public and Community Defenders and the National Association of Federal Defenders and the merits brief of the petitioner in *Beckles v. United States*, No. 15-8544, a matter presently pending before the United States Supreme Court.  The Government objects to Mr. Lilley's first notice arguing that it does not consist of "supplemental authority" but "simply argument submitted by defense counsel in a pending case" before the Supreme Court.  (Obj. (Dkt. # 12) at 2.)  The court agrees and strikes Mr. Lilley's first notice of supplemental authority.  The Government did not object to Mr. Lilley's second notice.

[2] 18 U.S.C. § 924(e)(2)(B).

[3] "The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'"  *Welch v. United States*, --- U.S. ---, 136 S. Ct. 1257, 1262 (2016) (quoting *Johnson*, 135 S. Ct. at 2556).

1  subsequently announced that the rule in *Johnson* was "a new substantive rule that has

2  retroactive effect in cases on collateral review."  *Welch*, 136 S. Ct. at 1268.

3  Under the United States Sentencing Guidelines ("the Guidelines"), a defendant's

4  base offense level is enhanced if the defendant has "at least two felony convictions of

5  either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  At

6  the time of Mr. Lilley's sentencing, the Guidelines defined a "crime of violence" as "any

7  offense under federal, state, or local law punishable by imprisonment for a term

8  exceeding one year, that—(1) has as an element the use, attempted use, or threatened use

9  of physical force against the person or another, or (2) is burglary of a dwelling, arson, or

10 extortion, involves use of explosives, or otherwise involves conduct that presents a

11 serious potential risk of physical injury to another."[4]  U.S.S.G. § 4B1.2(a).  The "crime of

12 violence" definition contained three parts:  (1) the elements clause, (2) the enumerated

13 offenses clause, and (3) the residual clause.  *See United States v. Ladwig*, --- F. Supp.

14 3d ---, 2016 WL 3619640, at *2 (E.D. Wash. June 28, 2016) (describing identical

15 language in the ACCA as the elements clause, the enumerated offenses clause, and the

16 residual clause).

17 The residual clause of the Guidelines' former Section 4B1.2(a) ("the Career

18 Offender Guidelines") is at issue in Mr. Lilley's petition.  (*See* Petition at 3-12.)  The

19

---

20 [4] The Sentencing Commission has adopted an amendment to the definition of "crime of
   violence" in the Guidelines, effective August 1, 2016, which deletes the residual clause in
21 § 4B1.2(a)(2).  *See United States v. Grant*, No. 09-CR-01035-PJH-1, 2016 WL 3648639, at *1
   (N.D. Cal. July 8, 2016); UNITED STATES SENTENCING COMM'N, *Supplement to the 2015*
22 *Guidelines Manual* § 4B1.2(a)(2) (Aug. 2016).  Unless otherwise stated, all references herein to
   U.S.S.G. § 4B1.1 and its subsections are to the former U.S.S.G. § 4B1.2 (Nov. 2015).

1  former residual clause allowed a court to enhance a person's sentence if the person had at

2  least two prior convictions for a felony that "otherwise involves conduct that presents a

3  serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2).  The

4  Guidelines' former residual clause was identical to the ACCA's unconstitutional residual

5  clause.  *Compare* 18 U.S.C. § 924(e)(2)(B), *with* U.S.S.G. § 4B1.2(a)(2); *see Johnson*,

6  135 S. Ct. at 2557.

7  ### B.  Factual Background

8  On November 6, 2014, Mr. Lilley pleaded guilty to possession of a stolen firearm

9  in violation of 18 U.S.C. § 922(j).  *See United States v. Lilley*, No. CR14-0222JLR (W.D.

10  Wash.), Dkt. ## 26 ("Felony Information"), 31 ("Plea Agreement"); *see also id.*, Dkt.

11  # 34 ("Order of Acceptance of Guilty Plea").  In his Plea Agreement, Mr. Lilley waived

12  his right to appeal and his right to bring a collateral attack against his conviction and

13  sentence, except in the case of ineffective assistance of counsel.  *See id.*, Plea Agreement

14  at 3, 7.

15  The court held Mr. Lilley's sentencing hearing on April 27, 2015.  *Id.*, Dkt. # 43.

16  The presentence report asserted that Mr. Lilley's Base Offense Level was 24 because Mr.

17  Lilley had three prior convictions for serious drug offenses or crimes of violence.  *Id.*,

18  Dkt. # 35 (sealed) ("PSR") ¶ 14 (citing U.S.S.G § 2K2.1(b)).  The presentence report

19  added a 2-level enhancement under U.S.S.G. § 2K2.1(b)(4) because the firearm was

20  stolen, *id.*, PSR ¶ 15, but also decreased Mr. Lilley's offense level by 3 because he

21  pleaded guilty and accepted responsibility, *id.*, PSR ¶ 21.  Thus, the presentence report

22  calculated a Total Offense Level of 23.  *Id.*, PSR ¶ 22.  At the sentencing hearing, the

court noted on the record that "[t]here did not seem to be any disagreement" with a Total

Offense Level of 23, a criminal history category of 5, and a Guidelines sentencing range

of 84 to 105 months.  *Id.*, Dkt. # 45 ("Tr. Sentencing Hr'g") at 2:23-3:1; *see also id.*, PSR

¶¶ 22, 30, 55.  Mr. Lilley's counsel did not object to or attempt to correct the court's

statement.  *See generally id.*, Tr. Sentencing Hr'g.  Ultimately, the court sentenced Mr.

Lilley to 96 months of imprisonment followed by three years of supervised release.  *Id.*,

Dkt. # 44 ("Judgment"); *id.*, Tr. Sentencing Hr'g. at 25:14-22.

On March 18, 2016, less than one year following his sentencing hearing, Mr.

Lilley filed a habeas corpus petition under 28 U.S.C. § 2255 to vacate, set aside, or

correct his sentence.  (*See* Petition.)  Mr. Lilley's petition is now before the court.

### III.    ANALYSIS

#### A.  Legal Standard

A prisoner in federal custody may collaterally challenge his sentence under 28

U.S.C. § 2255 on "the ground that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack . . . ."[5]  28 U.S.C. § 2255(a).  The claimed

error of law must be "a fundamental defect which inherently results in a complete

---

[5] A prisoner seeking such relief must generally bring his Section 2255 petition within one year of "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1). Mr. Lilley was sentenced on April 27, 2015.  *See United States v. Lilley*, No. CR14-0222JLR (W.D. Wash.), Judgment (entered on April 27, 2015).  Mr. Lilley filed his habeas corpus petition on March 18, 2016—less than one year following the entry of judgment against him.  (*See* Petition.)  Accordingly, his petition is timely.

1   miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v.*

2   *United States*, 368 U.S. 424, 429 (1962)).

3       **B.   Mr. Lilley's Petition**

4       Mr. Lilley argues that he is entitled to habeas corpus relief under 28 U.S.C.

5   § 2255.  Based on the holding in *Johnson* that the residual clause of the ACCA is

6   unconstitutionally vague, Mr. Lilley asserts that the identical residual clause in the Career

7   Offender Guidelines is also unconstitutionally vague.[6]  (Petition at 7-12.)  Before the

8   court can address that issue, it must address two predicate issues raised by the

9   Government:  (1) whether Mr. Lilley waived his right to challenge his sentence in a post-

10   conviction proceeding (Resp. at 10-12), and (2) whether his claims are procedurally

11   barred (*id.* at 12-15).  After the court resolves these issues, it turns to whether the

12   Supreme Court's ruling in *Johnson* renders the residual clause in the Career Offender

13   Guidelines unconstitutionally vague.

14       **1.   Waiver**

15       The Government argues that Mr. Lilley waived his right to challenge his sentence

16   in a post-conviction proceeding.  (Resp. at 10-12.)  In his Plea Agreement, Mr. Lilley

17   expressly waived his right to appeal his sentence, and also expressly waived "to the full

18

19       [6] In addition, Mr. Lilley asserts that he was denied his Sixth Amendment right to

20   effective assistance of counsel because his trial counsel failed to seek a continuance of his
     sentencing from April 2015 to July 2015, and the Supreme Court was likely to (and ultimately

21   did) issue its ruling in *Johnson* by the end of June 2015.  (Petition at 4-7.)  Because the court
     grants Mr. Lilley's petition based on the first ground for relief, it is unnecessary for the court to

22   consider this issue.  Mr. Lilley also initially raised a third ground for relief (*see id.* at 3-4), but he
     withdrew this ground in his reply memorandum (Reply (Dkt. # 9) at 1).

1    extent of the law . . . any right to bring a collateral attack against the conviction and

2    sentence, including any restitution order imposed, except as it may relate to the

3    effectiveness of legal representation." *See* Plea Agreement at 7.

4    Plea agreements are "essentially contracts" and are to be enforced pursuant to their

5    literal terms, construing any ambiguities in the defendant's favor. *United States v.*

6    *Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014). "A waiver of appellate rights 'is

7    enforceable if (1) the language of the waiver encompasses the defendant's right to appeal

8    on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *United*

9    *States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2015) (quoting *United States v.*

10   *Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)).  Even if a defendant's waiver meets this

11   criteria, the appeal waiver will not apply if:  (1) a defendant's guilty plea failed to comply

12   with Federal Rule of Criminal Procedure 11; (2) the sentencing judge informs a

13   defendant that he or she retains the right to appeal; (3) the sentence does not comport

14   with the terms of the plea agreement; or (4) the sentence violates the law. *United States*

15   *v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (collecting cases).

16   Here, only the last exception—that the sentence violates the law—is potentially

17   applicable.  "A sentence is illegal if it exceeds the permissible statutory penalty for the

18   crime or violates the Constitution." *Id.*; *see also United States v. Mendez Gonzalez*, 697

19   F.3d 1101, 1104 (9th Cir. 2012) (determining that a sentence below the statutory

20   maximum is not illegal and cannot excuse a valid waiver of appeal).  Because the court

21   sentenced Mr. Lilley to a term of imprisonment below the statutory maximum, his

22   sentence is only illegal if it violates the Constitution. *See United States v. Torres,* 828

1   F.3d 1113, 1125 (9th Cir. 2016) ("A waiver of appellate rights will also not apply if a

2   defendant's sentence is 'illegal,' which includes a sentence that 'violates the

3   Constitution.'") (quoting *Bibler*, 495 F.3d at 624).

4          The Government asserts that because Mr. Lilley agreed to "waive[] to the full

5   extent of the law . . . any right to bring a collateral attack" (Plea Agreement at 7), his

6   waiver does not permit an exception for a constitutional challenge.   (Resp. at 11.)

7   However, like the waiver at issue here, the waiver in *Bibler* was also broadly worded to

8   "waive[] all right to appeal the sentence imposed by the Court."  495 F.3d at 624

9   (alterations in original).  The *Bibler* court nevertheless concluded that the waiver

10  exception for illegal sentences could arguably apply, including specifically for a sentence

11  that violates the Constitution.[7]  *Id.*  Further, in *Torres*, 828 F.3d at 1125, the Ninth Circuit

12  stated that if *Johnson* nullifies the residual clause of the Career Offender Guideline,

13  sentences rendered pursuant to the that clause are likely unconstitutional, and thus

14  waivers in plea agreements cannot bar collateral attacks on that basis.[8]  Finally, in *United*

15  *States v. Kinman*, No. 16CV1360 JM, 2016 WL 6124456 (S.D. Cal. Oct. 20, 2016), the

16  district court considered a waiver containing the identical language the Government relies

17  upon here.  *Id.* at *3.  The district court held that a waiver "to the full extent of the law"

18

19         [7] The exception did not apply in *Bibler* because the defendant did not allege a
    constitutional violation and the sentence imposed by the district court fell below the statutory

20  minimum.  495 F.3d at 624.

21         [8] In *Torres*, the Ninth Circuit looked past a collateral attack waiver where the government
    conceded *Johnson* applied retroactively to render the residual clause in USSG § 4B 1.2(a)(2)

22  unconstitutionally vague.  828 F.3d at 1125 (holding that the government's concession rendered
    the appellant's sentence illegal).

1    of any right to collaterally attack his conviction and sentence did not bar the petitioner's

2    Section 2255 motion based on *Johnson*.  *Id.*

3         Based on these authorities, the court concludes that Mr. Lilley's waiver of his right

4    to bring a collateral attack on his sentence does not apply to the instant Section 2255

5    petition based on *Johnson*.  Whether the collateral-attack waiver may be enforced and

6    whether Mr. Lilley has proved a valid constitutional claim under *Johnson* collapse into

7    the same inquiry.  Because the court ultimately concludes that Mr. Lilley's sentence

8    violates the Constitution, *see infra* § III.B.4, his waiver of collateral review does not bar

9    his claim.

10        **2.  Procedural Default**

11        The Government also argues that Mr. Lilley procedurally defaulted on his current

12   Section 2255 petition.  (US Resp. at 12-15.)  To overcome procedural default, Mr. Lilley

13   must demonstrate (1) "cause" and (2) "actual prejudice resulting from the errors of which

14   he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).  The Government

15   challenges only Mr. Lilley's ability to demonstrate "cause."  (US Resp. at 12-15.)

16        The Supreme Court has held that cause is found when "the factual or legal basis

17   for a claim was not reasonably available to counsel . . . would constitute cause" excusing

18   a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Thus, if objections at

19   trial or filing a notice of appeal "would have been futile, because a solid wall of circuit

20   authority," the petitioner has shown cause. *English v. United States*, 42 F.3d 473, 479

21   (9th Cir. 1994) (internal quotations and citations omitted); *see also Kimes v. United*

22   *States*, 939 F.2d 776, 778 (1991) (holding that failure to object to a jury instruction was

not fatal to a Section 2255 petition because well-settled law precluded the claim at the time).

Here, *Johnson* expressly overruled prior Supreme Court cases that upheld the ACCA's residual clause, including specifically *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011).  *Johnson*, 135 S. Ct. at 2563. Thus, before the Supreme Court decided *Johnson* on June 26, 2015, vagueness challenges to the residual clauses in the ACCA—and by extension the Career Offender Guidelines— were foreclosed by the Supreme Court's prior decisions in *James* and *Sykes*. Accordingly, Mr. Lilley has demonstrated cause for his procedural default.

The Government did not challenge Mr. Lilley's ability to demonstrate prejudice. For the same reasons as those stated in *Kinman*, the court concludes that the constitutional error that Mr. Lilley alleges in calculating his Guidelines range would "work[] to his *actual* and substantial disadvantage" if demonstrated.  2016 WL 6124456, at *3-4.  Accordingly, the court finds that Mr. Lilley has shown cause and prejudice sufficient to overcome any procedural default, and the court turns to the merits of his claim.

### 3.  *Johnson*'s Retroactive Applicability to the Residual Clause of the Career Offender Guidelines

The Government agrees that *Johnson*'s vagueness holding extends to the residual clause in the Career Offender Guidelines.  (Resp. at 16.)  This court has reached the same conclusion.  *See Carpio v. United States*, No. C16-0647JLR, 2016 WL 6395192, at *3 (W.D. Wash. Oct. 28, 2016) (holding that *Johnson* "applies with equal force to the

identically worded residual clause in the Guidelines").  However, the Government argues that *Johnson* does not apply retroactively to Mr. Lilley's challenge on collateral review of the court's calculation of his sentence based on the Guidelines.  (*See id.* at 16-23.)  "Judges in this District have uniformly rejected [this] position."  *See Carpio*, 2016 WL 6395192, at *5 (collecting cases).  The court also rejects the Government's position here and finds that *Johnson* applies retroactively to Mr. Lilley's challenge.

### 4.  The Sentencing Court's Reliance on the Residual Clause of the Career Offender Guidelines

The court next considers whether the sentencing court relied upon the Career Offender Guidelines' constitutionally invalid residual clause when it imposed Mr. Lilley's sentence.  Although the *Johnson* Court invalidated the ACCA's residual clause, the Court's decision did "not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the [ACCA's] definition of a violent felony." 135 S. Ct. at 2563.  Similarly, the court's determination in this case that *Johnson* applies retroactively to invalidate the residual clause does not call into question the remainder of the Career Offender Guidelines' definition of crime of violence, including its enumerated offenses clause and its elements clause.  If the sentencing court did not rely on the invalid residual clause, but instead relied upon the elements clause or the enumerated offenses clause, then Mr. Lilley is not entitled to the relief he seeks.  For the reasons stated below, the court concludes that at least two of Mr. Lilley's three prior convictions could not have been considered a crime of violence without reference to the residual clause.

Accordingly, Mr. Lilley is entitled to habeas corpus relief under Section 2255.

1    At Mr. Lilley's sentencing, Mr. Lilley's Base Offense Level was 24 because Mr.

2    Lilley had previously been convicted of "three prior offenses that are crimes of violence

3    or controlled substance offenses."  (PSR ¶ 14 (citing U.S.S.G. § 2K2.1).)  Section

4    2K2.1(a)(2) sets a defendant's Base Offense Level at 24 "if the defendant committed any

5    part of the instant offense subsequent to sustaining at least two felony convictions of

6    either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).

7    Mr. Lilley argues that two of his prior convictions—attempting to elude a police officer

8    and second degree robbery—are no longer crimes of violence under Section 2K2.1 of the

9    Guidelines.  (Petition at 4.)  In *Sykes v. United States*, 564 U.S. 1, 15-16 (2011), the

10   United States Supreme Court held that eluding a police officer was a violent felony under

11   the residual clause of the ACCA, but the Supreme Court explicitly overruled the *Sykes*

12   decision in *Johnson*, 135 S. Ct. at 2563.  Indeed, the Government never contends in

13   response to Mr. Lilley's petition that Mr. Lilley's conviction for attempting to elude an

14   officer qualifies as a predicate offense under Section 2K2.1(a)(2) of the Guidelines.  (*See*

15   *generally* Resp.)  Instead, the Government pins its argument that Mr. Lilley is not entitled

16   to Section 2255 relief on Mr. Lilley's prior conviction for second degree robbery.  (*See*

17   *id.* at 23-33.)  The Government contends that Mr. Lilley's conviction for second degree

18   robbery continues to qualify as a predicate offense under Section 2K2.1(a)(2) even if the

19   residual clause of the Career Offender Guidelines is excised.  (*See id.*)  As the court

20   explains below, Mr. Lilley is entitled to Section 2255 habeas corpus relief because (1)

21   robbery does not qualify under the enumerated offenses clause of Section 4B1.2(a)(1)

22   and (2) second degree robbery in Washington does not qualify under the "physical force"

1  requirement of the elements clause of Section 4B1.2(a)(2) of the Career Offender

2  Guidelines.[9]

3      **a.   Application Note 1 and the Enumerated Offenses Clause**

4          After excising the residual clause, the Career Offender Guidelines define a "crime

5  of violence" as any offense under federal or state law, punishable by imprisonment for a

6  term exceeding one year, "that—(1) has as an element the use, attempted use, or

7  threatened use of physical force against the person of another, or (2) is burglary of a

8  dwelling, arson, or extortion, [or] involves use of explosives." U.S.S.G. § 4B1.2(a).

9  Thus, only the elements clause and the enumerated offenses clause remain within the

10 Career Offender Guidelines definition of a "crime of violence." *Id*.  The Government

11 argues that even without the residual clause, Mr. Lilley's conviction for second degree

12 robbery "is an enumerated offense that is categorically a crime of violence." (Resp. at

13 26.)  Application Note 1 of the commentary to the Career Offenders Guidelines indicates

14 that the term "crime of violence" "includes murder, manslaughter, kidnapping,

15 aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension

16 of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, comment (n.1).  The

17 Government relies upon Application Note 1 to argue that even though the residual clause

18

19      [9] The Government asserts that Mr. Lilley must demonstrate by a preponderance of the
20 evidence that the sentencing court relied exclusively on Section 4B1.2's residual clause in ruling
   that his conviction was a crime of violence.  (Resp. at 24.)  Mr. Lilley argues that where the
21 record is ambiguous, the Government bears the responsibility for any lack of clarity and any
   ambiguity must be resolved in his favor.  (Petition at 4-5.)  The court need not resolve this
22 dispute because under either standard, Mr. Lilley's prior conviction for robbery in the second
   degree could only qualified as a crime of violence under the residual clause. *See infra* § III.B.4.

1   has been invalidated, Mr. Lilley is not entitled to Section 2255 relief because robbery is

2   an enumerated offense under Application Note 1.  (*See id.* at 26-29.)

3         The Government points to Ninth Circuit opinions involving robbery under

4   California law and different provisions of the Guidelines to support its argument.  As the

5   government points out, the Ninth Circuit has previously held that robbery under

6   California Penal Code ("CPC") Section 211 is a crime of violence for purposes of Section

7    2L1.2 of the Guidelines.  (*See* Resp. at 28-30 (citing *United States v. Flores-Mejia*, 687

8   F.3d 1213, 1215-16 (9th Cir. 2012) and *United States v. Becerril-Lopez*, 541 F.3d 881,

9   892-93 (9th Cir. 2008)).)  In those cases, the Ninth Circuit held that "CPC § 211 is

10  categorically a 'crime of violence' under U.S.S.G. § 2L1.2, because, in all its

11  applications, CPC § 211 always constitutes either generic robbery or generic extortion,

12  both of which are included in U.S.S.G. § 2L1.2's definition of 'crime of violence.'"

13  *United States v. Dixon*, 805 F.3d 1193, 1196 (9th Cir. 2015).  However, the

14  Government's reliance on cases involving Section 2L1.2 is imperfect because unlike

15  Section 4B1.2 of the Career Offender Guidelines, Section 2L1.2 does not contain a

16  residual clause or a definition of "crime of violence."  Instead, an application note to

17  Section 2L1.2 defines "crime of violence" to be any of a list of enumerated generic

18  offenses, including both robbery and extortion, or any offense that "has as an element the

19  use, attempted use, or threatened use of physical force against the person of another."

20  U.S.S.G. § 2L1.2, comment (n.1(b)(iii)); *see also United States v. Walker*, --- F. Supp. 3d

21  ----, No. CR 12-0430 CW, 2016 WL 5921257, at *6 (N.D. Cal. Oct. 5, 2016).

22

ORDER- 14

As noted above, the Career Offender Guidelines' definition of "crime of violence" at issue here includes extortion, but not robbery, in its list of enumerated generic crimes. *See* U.S.S.G. § 4B1.2(a)(2).  Application Note 1 to Section 4B1.2 includes robbery in an additional list of enumerated generic crimes.  Citing *Stinson v. United States*, 508 U.S. 36, 38 (1993), the Government argues that Application Note 1, including the list of generic crimes contained therein, is binding on the court.  (Resp. at 28.)  However, Guidelines commentary is not binding if "it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson*, 508 U.S. at 38.  In *United States v. Dixon*, 805 F.3d 1193 (9th Cir. 2015), the Ninth Circuit held that generic robbery does not qualify as a crime of violence under the elements clause of the ACCA, which is identical to the elements clause of the Career Offender Guidelines in Section 4B1.2, because generic robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person of another."[10] 805 F.3d at 1197-98.  Thus, *Dixon* undercuts the Government's position that the Ninth Circuit would hold that Section 4B1.2 of the Career Offender Guidelines incorporates the list the offenses contained in Application Note 1 even after *Johnson*.[11]  Further, because

---

[10] Physical force is defined as "violent force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  In addition, the use of force "must be intentional, not just reckless or negligent."  *Dixon*, 805 F.3d at 1197.

[11] In a recent unpublished opinion, the Ninth Circuit held that robbery in California under CPC § 211 continues to qualify as a crime of violence under Section 4B1.2 following *Johnson*. *See United States v. Tate*, --- F. App'x ----, No. 15-10283, 2016 WL 4191909, at *1 (9th Cir. Aug. 9, 2016) (unpublished).  This unpublished opinion does not alter the court's conclusion. First, the opinion bears no precedential weight.  *See* Ninth Circuit Rule 36-3.  Second, the

1    the Sentencing Commission enumerated only certain offenses, not including robbery, in

2    the text of § 4B1.2(a)(2), the court finds that it would be inconsistent with the language of

3    the provision to unilaterally expand the number of enumerated offenses based solely on

4    the commentary.  *United States v. Bercier*, --- F. Supp. 3d ----, No. CR-13-102-RMP,

5    2015 WL 3619638, at *7 n.3 (E.D. Wash. June 24, 2016).  The court concludes,

6    therefore, that Application Note 1 to the Career Offender Guidelines, which includes

7    robbery, "is not binding because it either is inconsistent with the [Career Offender]

8    Guidelines without the residual clause or violates the Constitution because it relies on the

9    residual clause."  *Walker*, 2016 WL 5921257, at *6.

10          Based on the foregoing authorities, the court determines that the residual clause is

11   unconstitutionally vague under *Johnson* and, to the extent the commentary contains

12   offenses that qualify as crimes of violence only under the residual clause, the

13   commentary is not binding on the court under *Stinson*.  *See Walker*, 2016 WL 5921257 at

14   *6 (citing *United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) (holding that "in

15   the absence of the residual clause, there is nothing within § 4B1.2(a)'s text to serve as an

16   anchor for Application Note 1's inclusion of possession of a machinegun within the

17   definition of crime of violence")).  Thus, following *Johnson*, the offenses enumerated in

18   Application Note 1 must qualify as crimes of violence either (1) under the elements

19   clause of Section 4B1.2(a)(1) or (2) because they are enumerated in the text of Section

20

21   opinion did not consider whether the inclusion of robbery in Application Note 1 continues to be
     binding under *Stinson*.  Finally, *Tate* involves California's robbery law, which—as discussed in
22   the body of this opinion—is materially distinct from Washington's law against robbery.

1    4B1.2(a)(2).  Robbery is not enumerated in the text of Section 4B1.2(a)(2).  Thus, Mr.

2    Lilley's conviction for robbery does not qualify as a predicate crime of violence under the

3    enumerated clause.

4              **b.   The Generic Crime of Robbery and the *DesCamps* Test**

5              Even if the Government were correct, however, and robbery remains an

6    enumerated offense based on its inclusion in Application Note 1, second degree robbery

7    in Washington cannot be a predicate crime of violence under Section 4B1.2 because it is

8    not a categorical match for the generic federal offense and the statute is indivisible.  To

9    determine if second degree robbery in Washington is a crime of violence under Section

10   4B1.2, the court applies the analytical approach of *Descamps v. United States*, --- U.S. ---

11   , 133 S. Ct. 2276 (2013).  Under *Descamps*, the court first compares the elements of the

12   state offense to the elements of the generic offense defined by federal law.  *Lopez-*

13   *Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015).  Second degree robbery under

14   Washington law can only be a categorical match for "generic robbery" if "the elements of

15   the state crime are the same as or narrower than the federal offense."  *See id.*  If the

16   statute is "overbroad," meaning that it criminalizes conduct that goes beyond the

17   elements of the federal offense, the court must then determine if the statute is "divisible"

18   or "indivisible."  *Id.*  If the statute is indivisible, the court's inquiry ends because a

19   conviction under an overbroad and indivisible statute can not serve as a predicate offense.

20   *Id.*

21             The Ninth Circuit has defined "generic robbery" as "aggravated larceny,

22   containing at least the elements of misappropriation of property under circumstances

1    involving immediate danger to the person." *Walker*, 2016 WL 5921257 at *6 (citing

2    *Becerril-Lopez*, 541 F.3d at 891; *United States v. Santiesteban-Hernandez*, 469 F.3d 376,

3    380 (5th Cir. 2006)).  In Washington, "[a] person is guilty of robbery in the second

4    degree if he or she commits robbery."  RCW 9A.56.210.  Robbery is defined in part as

5    "unlawfully tak[ing] personal property from the person of another . . . against his will by

6    the use or threatened use of immediate force . . . to that person or his property."  RCW

7    9A.56.190.  Thus, second degree robbery under Washington law criminalizes physical

8    force against property and is consequently overbroad because, under the Ninth Circuit's

9    definition of "generic robbery," the offense must involve "immediate danger to the

10   *person*."  *Becerril-Lopez*, 541 F.3d at 891 (internal citation omitted) (emphasis in

11   original); *see also id*. at 891 n.8 ("We are unconvinced that a taking by threat to property

12   necessarily entails dangers to the person.").  As such, second degree robbery under

13   Washington law is not a categorical match for "generic robbery."

14         Under the second step of *Descamps*, the court must determine if the second degree

15   robbery statute in Washington State is divisible or indivisible.  *Descamps*, 133 S. Ct. at

16   2284.  A statutory phrase that refers to multiple, alternative means of committing a crime

17   "must be regarded as indivisible if the jurors need not agree on which method of

18   committing the offense the defendant used."  *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th

19   Cir. 2014).  In *Bercier*, the district court determined that second degree robbery in

20   Washington is indivisible because it contains alternative means of committing the crime.

21   2016 WL 3619638, at *6.  Specifically, a jury is only required to unanimously conclude

22   that a defendant used or threatened to use force against something, either a person or that

1    person's property.  *Id.*  The jury is not required to unanimously agree regarding what or

2    whom the defendant targeted with the use or threat of physical force.  *Id.*  The *Bercier*

3    court determined, therefore, that "Washington State second degree robbery is not a

4    categorical match for 'robbery' and because the statute is indivisible, second-degree

5    robbery cannot be a predicate 'crime of violence.'"  2016 WL 3619638, at *7.  This court

6    agrees with the *Bercier* court's analysis.

7           The Government nevertheless asserts that hypothetical robbery scenarios

8    involving the threatened use of force against property are categorical matches for generic

9    extortion, a separate enumerated offense under Section 4B1.2(a)(2).  (*See* Resp. at 32.)

10   The *Bercier* court rejected this argument and concluded that second degree robbery in

11   Washington is not a categorical match for generic extortion.  2016 WL 3619638, at *7.

12   The *Bercier* court noted that "'[g]eneric extortion' is defined as 'obtaining something of

13   value from another with his consent induced by the wrongful use of force, fear, or

14   threats.'"  *Id.* (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003)).

15   On the other hand, Washington State second-degree robbery criminalizes non-consensual

16   takings.  *Id.* (citing 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 37.04).  Accordingly,

17   the *Bercier* court concluded that Washington State second-degree robbery is not a

18   categorical match for "generic extortion" because the state statute criminalizes threats of

19   force directed towards property that may involve sufficient force to negate any possible

20   finding that the defendant intended to gain the victim's consent.  *Id.*

21          The Government, however, urges the court to follow *Becerril-Lopez*, 541 F.3d at

22   892, which found that a robbery conviction under California law involving a threat "not

ORDER- 19

1   encompassed by generic robbery . . . would necessarily constitute generic extortion."

2   (*See* Resp. at 32.)  As noted above, the *Bercier* court concluded that *Becerril-Lopez* does

3   not extend to Washington State second degree robbery, and this court agrees.  *See*

4   *Bercier*, 2016 WL 3619638 at *7.  The court concludes, contrary to the Government's

5   position, that second degree robbery in Washington cannot be a predicate "crime of

6   violence" as "extortion."

7               **c.   The Elements Clause**

8          The Government also implies that second degree robbery in Washington satisfies

9   the "physical force" requirement of the elements clause in Section 4B1.2(a)(1).  (*See*

10  Resp. at 30, 32.)  The court disagrees.  The Supreme Court has defined "physical force"

11  as "*violent* force—that is, force capable of causing physical pain or injury to another

12  person."  *Johnson*, 559 U.S. at 140

13  (emphasis in original).  As noted above, Washington State second-degree robbery can be

14  committed by threat of force against a person's property.  *See* RCW 9A.56.190.

15  Washington State second-degree robbery is, therefore, not a categorical match for the

16  Section 4B1.2(a)(1) definition of "physical force."  As also noted above, the Washington

17  State second-degree robbery statute is indivisible.  *See Bercier*, 2016 WL 3619638, at *6.

18  Therefore, second-degree robbery cannot be a predicate "crime of violence" under the

19  "physical force" elements clause.  *See id.* at *8.

20         The court concludes that second degree robbery in Washington is not a "crime of

21  violence" whether considered as "generic robbery," "generic extortion," or an offense

22  involving "physical force."  As such, Mr. Lilley's conviction for second degree robbery

1  cannot be a predicate "crime of violence" under either Sections 4B1.2(a)(1) or (2) of the

2  Career Offender Guidelines.  Thus, even though the record is silent, for Mr. Lilley to

3  have been given an enhanced sentence under the Career Offender Guidelines, the

4  sentencing court must have relied upon the unconstitutional residual clause.

5  Accordingly, the court concludes that Mr. Lilley is entitled to habeas corpus relief under

6  28 U.S.C. § 2255(a) because the court imposed his sentence "in violation of the

7  Constitution" and grants his motion.

8  ## IV. CONCLUSION

9       Based on the foregoing, the court GRANTS Mr. Lilley's motion to vacate, correct,

10  or set aside his sentence (Dkt. # 1) pursuant to 28 U.S.C. § 2255.  The court VACATES

11  and SETS ASIDE the sentence in No. CR14-0222JLR (W.D. Wash.).  The court will

12  permit Mr. Lilley to submit objections to his Presentence Report pursuant to Federal Rule

13  of Criminal Procedure 32(i)(1)(D), allow both Mr. Lilley and the Government to argue

14  for an appropriate and lawful sentence, and resentence him.  The parties shall contact the

15  court's Courtroom Deputy to provide their recommendations and availability for a new

16  sentencing date.  The court further DIRECTS the Clerk of Court to forward a copy of this

17  order to Mr. Lilley and all counsel of record.

18       Dated this 29th day of November, 2016.

19

20

21       _____
         JAMES L. ROBART
22       United States District Judge

ORDER- 21